UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STANTON-NEGLEY DRUG            :      **CIVIL NO. 1:08-CV-0777**
COMPANY, et al.,               :
                               :      (Magistrate Judge Smyser)
          Plaintiffs           :
                               :
      v.                       :
                               :
PENNSYLVANIA DEPARTMENT OF     :
PUBLIC WELFARE, et al.,        :
                               :
          Defendants           :

**<u>MEMORANDUM AND ORDER</u>**

This civil action was initiated by a complaint that
was filed in the United States District Court for the Western
District of Pennsylvania on September 27, 2007.  The
plaintiffs are the Stanton-Negley Drug Company, and Meyer
Simon and Steven Simon. Meyer Simon and Steven Simon are the
owners and operators of Stanton-Negley.  The defendants named
in the complaint are the Pennsylvania Department of Public
Welfare;  Estelle B. Richman, Secretary of Pennsylvania
Department of Public Welfare; the Office of Medical
Assistance Programs; James L. Hardy, Acting Deputy Secretary
of the Office of Medical Assistance Programs; the Office of
Administration Contract Policy, Management and Procurement,
Department of Public Welfare; and, Daniel R. Boyd,

Official-in-Charge, Division of Procurement Department of Public Welfare.[1]

A motion to dismiss the complaint was filed on behalf of all of the defendants, and a supporting brief, on December 20, 2007.  (Docs. 4 and 5).  A brief in opposition was filed on January 16, 2008.  (Doc. 10).  A reply brief was filed by the defendants on March 8, 2008.  (Doc. 25).  The plaintiffs filed a sur-reply brief on March 21, 2008. (Doc. 29).

By Order of April 24, 2008, the United States District Court for the Western District of Pennsylvania ordered that this civil action be transferred to the United States District Court for the Middle District of Pennsylvania. (Doc. 30).

The parties filed a joint case management plan on June 16, 2008.  (Doc. 35).  In the plan, the parties stated that they agree to jurisdiction by a magistrate judge.  The case was reassigned pursuant to LR 73.1(c) to the undersigned.  A case management conference was held on June 19, 2008.

---

1.  By Order of March 13, 2008, the complaint was dismissed as to defendants Pennsylvania Department of Public Welfare, Office of Medical Assistance Programs, and Office of Administration, Contract Policy, Management and Procurement.  (Doc. 26).

2

The issues raised in the defendants' motion to dismiss the complaint have been decided in part.  One of the defendants' positions was that the complaint should be dismissed as to defendants Pennsylvania Department of Public Welfare, Office of Medical Assistance Programs, and Office of Administration, Contract Policy, Management and Procurement. As noted above, the complaint has been (voluntarily) dismissed as to these three former defendants.  Another position was that venue is properly in the Middle District of Pennsylvania.  The case was transferred here pursuant to the Order of Judge Fischer of the United States District Court for the Western District of Pennsylvania.

The defendants have also argued other grounds for dismissal in the motion to dismiss the complaint.  This Memorandum and Order addresses those other arguments.

The complaint alleges that Stanton-Negley, a Pennsylvania corporation located in Pittsburgh, and Meyer Simon and Steven Simon, the owners and operators of Stanton-Negley, who are licenced pharmacists, have been operating a pharmacy and/or drug store for more that forty years.  They participate in the Medicare and Medical Assistance Programs.

3

They provide products and drugs to recipients under these programs.  The complaint asserts that the rights of the plaintiffs to equal protection and due process of law under the Fourteenth Amendment of the United States Constitution have been violated by the changes made by the Commonwealth of Pennsylvania in the mode of distribution of a certain category of pharmaceutical drugs.  They seek injunctive relief pursuant to 42 U.S.C. § 1983.

The complaint alleges that the defendant Commonwealth Department of Public Welfare, Offices therein and officers thereof implemented a Specialty Pharmacy Drug Program.  A Request for Proposals (RFP) No. 31-06 initiated the process of implementation of the program.  Through the program, the complaint alleges, the defendants sought to limit, to two statewide, the number of contractors for speciality pharmacy services for Medical Assistance recipients, a limitation replacing a distribution system in which many pharmaceutical entities such as Stanton-Negley and pharmacists distributed the drugs.

The complaint describes "specialty pharmacy drugs" as medications that require a set of services to accomplish the

4

correct use or administration of the medication that are not typically provided in a traditional outpatient pharmacy setting.  The required services are generally biotechnical in nature, such as the administering of injections or the infusion of drugs that require special handling or that require special methods of injection or infusion.  Speciality pharmacy drugs are generally high-cost drugs.  Complex dosing regimens may be involved.  Patient education, monitoring and clinical supports are frequently required.

RFP No. 31-06 is intended to identify and to procure two contractors for forty-two Pennsylvania counties.  The remaining twenty-five counties, those being the twenty-five least populated Pennsylvania counties, will not be covered by the two newly selected providers.  Pursuant to the new program, Medical Assistance recipients in the forty-two covered counties must obtain speciality drugs (Speciality Pharmacy Drug Program drugs) from one of the two providers.

The complaint alleges that Stanton-Negley has been providing specialty pharmacy drug needs to many western Pennsylvania Medical Assistance recipients on a pervasive basis and is competent, is speedy, and uses rapid delivery

5

methods.  It alleges that heretofore no accreditation has

been required for it to perform the speciality drug supplying

and servicing it has provided.  The RFP 31-06 program,

however, requires that a putative provider be accredited.  To

become accredited would be very costly for Stanton-Negley,

and would take eight to fifteen months to accomplish.

Stanton-Negley began the process to obtain an accreditation

when it learned that accreditation would be needed for it to

bid to become a provider under the new proposed program.


     The complaint alleges that, although references to the

proposed speciality drug program were made by the Governor in

his budget address, and in the budget reviews of the

Department of Public Welfare, the anticipated program was not

the lead item discussed and the criteria to become a provider

is a subject that was not discussed in detail.  Providers

presently involved in the program were not contacted.  The

relevant information was not fully released until October of

2006.  There was not enough time allotted for Stanton-Negley

or any other community pharmacy to submit a bid.


     The complaint asserts that the accreditation

requirement and the short "turn around time" were "atypical

and questionable in nature."  No accreditation of providers had previously been required.  The complaint asserts that the RFP was directed at large providers and did not envision or intend to include existing providers.  It asserts that the projected cost savings for the Commonwealth under the new RFP are not going to be realized and are based upon faulty logic and reasoning.

The complaint alleges that the new program will redistribute specialty services and drugs being provided by thirty to fifty providers to, under the new program, two providers.  Seven bids were submitted for the two provider contracts.  None was from an existing provider.  The requirements of accreditation as of the time for the bid submission, for which the deadline was November 9, 2006, precluded many putative bidders from submitting bids.

The complaint is also "on behalf of MA recipients to be affected by the anticipated program."

The plaintiffs' business income will be substantially reduced as a result of the plaintiffs' loss of specialty pharmacy drugs and services income.

7

Count I of the complaint states a claim for injunctive relief pursuant to 42 U.S.C. § 1983.  Count II and Count III state claims for injunctive relief pursuant to 42 U.S.C. § 1396a(a)(10)(B) and 1396a(a)(23)(A).

The defendants in their brief in support of the motion to dismiss the complaint have presented and incorporated documents including RFP 31-06 (by reference to website) and a letter from the United States Department of Health and Human Services approving the RFP.  The plaintiffs have submitted electronic transcripts of proceedings in the Commonwealth Court of Pennsylvania.

The parties also have cited to the state (Commonwealth Court) litigation initiated by Stanton-Negley, a plaintiff here, challenging the Department of Public Welfare's decisions and actions.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail.  *Mortensen v. First Fed. Sav. & Loan*

*Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1396a(a)(10)(B) provides:

(B) that the medical assistance made available to any individual described in subparagraph (A)--

(I) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and

(ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A);

42 U.S.C. §1396a(a)(23)(A) provides:

any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services.

10

The defendants argue that this court should abstain because plaintiff Stanton-Negley has raised these same claims in proceedings brought and pending in state court, that this court should dismiss the case on the basis of the doctrines of claim(s) preclusion and issue(s) preclusion[2] because the Pennsylvania Commonwealth Court has held in a civil action in that Court in which Stanton-Negley was the plaintiff and the Department of Public Welfare was the defendant that the plaintiff's equal protection, due process and Title XIX claims are not claims upon which relief can be granted[3], and that the plaintiffs lack standing to raise claims on behalf of Medical Assistance recipients.  The defendants also present arguments against the merits of the plaintiffs' equal protection, due process and Title XIX claims.

We will initially address the argument that the plaintiffs' due process, equal protection and Title XIX claims are barred by the doctrine of issue preclusion, since

---

2.  We will refer to "claim preclusion" and to "issue preclusion" rather than to "res judicata" and "collateral estoppel."

3.  The Commonwealth Court's decision in *Stanton-Negley Drug Co. v. Department of Public Welfare,* 943 A.2d 377 (Pa. Cmmw. Ct., Feb. 28, 2008), was issued on February 28, 2008, after the brief in support of and the brief in opposition to this motion had been filed.

all three claims were addressed and decided by the
Commonwealth Court.

The doctrine of issue preclusion precludes a civil
action between parties who have already litigated the same
claim to final judgment on the merits in another civil
action.  The Third Circuit Court of Appeals said in *Delaware
River Port Authority v. Fraternal Order of Police,* 290 F.3d
567, 572 (3d Cir. 2002):

> Under the doctrine of issue preclusion, a
> determination by a court of competent
> jurisdiction on an issue necessary to support its
> judgment is conclusive in subsequent suits based
> on a cause of action involving a party or one in
> privity. E.g., *Kremer v. Chem. Constr. Corp.,* 456
> U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262
> (1982) ("[T]he usual rule is that merits of a
> legal claim once decided in a court of competent
> jurisdiction are not subject to redetermination
> in another forum."); *Allen v. McCurry,* 449 U.S.
> 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)
> ("Congress has specifically required all federal
> courts to give preclusive effect to state-court
> judgments whenever the courts of the State from
> which the judgments emerged would do so.");
> *Montana v. United States,* 440 U.S. 147, 153, 99
> S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under
> collateral estoppel, once an issue is actually
> and necessarily determined by a court of
> competent jurisdiction, that determination is
> conclusive in subsequent suits based on a
> different cause of action involving a party to
> the prior litigation."). Stated broadly, issue
> preclusion prevents relitigation of the same
> issues in a later case.

12

The plaintiffs argue here that their claims in this case are not precluded by the doctrine of issue preclusion. They argue in their sur reply brief that the fact that an appeal has been taken from the decision of the Commonwealth Court to the Pennsylvania Supreme Court, and is pending, prevents the application here of the doctrine of issue preclusion.  However, as the plaintiffs do acknowledge, a judgment is final for purposes of state law and application of res judicata (claim preclusion) and collateral estoppel (issue preclusion) unless and until it is reversed. *Philadelphia Electric Co. V. Pennsylvania Public Utility Commission,* 433 A.2d 620,626 (Pa. Commw. Ct. 1981).  Lack of finality is not a basis to hold that issue preclusion does not apply to the present case.

The plaintiffs also assert that there is not a complete identity of parties as between this case and the Commonwealth Court case because Meyer Simon and Steven Simon, the owners and operators of Stanton-Negley, were not plaintiffs in the state court action.  This argument is without merit, since the interests of the owner-operators of the company are not differentiated or distinguishable from

the interests of the company in the context of this
controversy.

The plaintiffs also assert that the Commonwealth Court
may have been deciding state constitution equal protection
and due process issues, not federal constitutional equal
protection and due process issues.  This argument is without
merit, in that the Commonwealth Court did specify that it
decided the equal protection and due process issues under
both the U.S. and the Pennsylvania Constitutions.

> The preclusive effect of a judgment is defined by
> claim preclusion and issue preclusion, which are
> collectively referred to as "res judicata."
> FN[5].  Under the doctrine of claim preclusion,
> a final judgment forecloses "successive
> litigation of the very same claim, whether or not
> relitigation of the claim raises the same issues
> as the earlier suit." *New Hampshire v. Maine,* 532
> U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968
> (2001).  Issue preclusion, in contrast, bars
> "successive litigation of an issue of fact or law
> actually litigated and resolved in a valid court
> determination essential to the prior judgment,"
> even if the issue recurs in the context of a
> different claim. *Id.,* at 748-749, 121 S.Ct. 1808.
> By "preclud[ing] parties from contesting matters
> that they have had a full and fair opportunity to
> litigate," these two doctrines protect against
> "the expense and vexation attending multiple
> lawsuits, conserv[e] judicial resources, and
> foste[r] reliance on judicial action by
> minimizing the possibility of inconsistent
> decisions." *Montana v. United States,* 440 U.S.

147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

> FN[5] These terms have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as "merger" and "bar," while issue preclusion encompasses the doctrines once known as "collateral estoppel" and "direct estoppel." See *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards*, 517 U.S., at 798, 116 S.Ct. 1761 (internal quotation marks omitted). Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U.S., at 40, 61 S.Ct. 115. *See also, e.g., Richards*, 517 U.S., at 798, 116 S.Ct. 1761; *Martin v. Wilks,* 490 U.S. 755, 761, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

*Taylor v. Sturgell,*___ U.S. ___, ___ S.Ct. ___, 2008 WL 2368748 (June 12, 2008).

Because the Commonwealth Court decided the plaintiffs' due process, equal protection and Title XIX claims, those claims are barred by issue preclusion.

The defendants' other argument is that the plaintiffs do not have standing to assert claims on behalf of Medical Assistance recipients.

In *Hein v. Freedom From Religion Foundation, Inc.,* ___ U.S. ___, ___, 127 S.Ct. 2553, 2562 (2007), the Court stated:

> Article III of the Constitution limits the judicial power of the United States to the resolution of "Cases" and "Controversies," and "'Article III standing ... enforces the Constitution's case-or-controversy requirement.'" *DaimlerChrysler Corp. v. Cuno,* 547 U.S. ___, ___, 126 S.Ct. 1854, 1861, 164 L.Ed.2d 589 (2006) (quoting *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)). "'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).
>
> "[O]ne of the controlling elements in the definition of a case or controversy under Article III" is standing. *ASARCO Inc. v. Kadish,* 490 U.S. 605, 613, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989)

(opinion of KENNEDY, J.). The requisite elements
of Article III standing are well established: "A
plaintiff must allege personal injury fairly
traceable to the defendant's allegedly unlawful
conduct and likely to be redressed by the
requested relief." *Allen v. Wright,* 468 U.S. 737,
751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

In addressing the standing question, we observe that
for reasons already stated this action will be dismissed as
to the claims of plaintiffs Stanton-Negley, Meyer Simon and
Steven Simon on the basis of issue preclusion.  The issue
preclusion grounds for dismissal would not apply to claims of
the unnamed Medical Assistance recipients.  But the putative
representatives of the unnamed recipients will not be parties
themselves.  The unnamed Medical Assistance recipients are
not parties.  The attorney for the plaintiffs whose claims on
their own behalf will be dismissed has no authorization to
represent the unnamed Medical Assistance recipients.  The
plaintiffs whose claims will be dismissed assert that their
relationship with the Medical Assistance recipients is such
that these plaintiffs should be authorized to represent those
non-parties' interests.  The court can not, however,
determine that to be true or not without hearing from those
non-party Medical Assistance recipients.

The court could not reasonably consider enjoining a program that would affect the interests of non-parties on the basis of a finding that the program would negatively affect their interests when they are not parties.  Even though their current pharmacist specialty drug providers may make a strong case that the change will negatively impact the Medical Assistance recipients, those recipients might not agree.  A case or controversy is not presented as to the interest(s) of the non-party Medical Assistance recipients in having the RFP No. 31-06 program enjoined when there is no indication that any non-party Medical Assistance recipient is asking the court to order such relief.  In *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498 (1990), cited by the plaintiffs, the Court held that a health care provider may bring a 42 U.S.C. § 1983 claim to challenge the way a state reimburses health care providers under the Medicaid Act.  The Court based the decision upon the state's duty under federal law (the Medicaid Act) to establish rates that are reasonable and adequate to meet the cost of a health care provider.  The interests advanced in *Wilder* were those of the health care providers.  In this case, the arguably analogous interests[4] are those that were litigated and decided in the Commonwealth

---

4.  We do not say that they are analogous.

18

Court litigation.  Those interests are being dismissed here
on the basis of issue preclusion.  The interests of the
health care providers in *Wilder* are not materially the same
as the interest of the pharmacists in this case.  The *Wilder*
case did not involve an assertion by the health care
providers of standing to assert and represent the interests
of non-party health care recipients.  The Court in *Wilder*
addressed the health care providers' interests as "intended
beneficiaries of the Boren Amendment."  496 U.S. 498 at 510.

The other cases cited by the plaintiffs[5] do not
support an assertion that there is a basis in law, consistent
with the requirement of a case or controversy, for the
plaintiff pharmacists to seek on behalf of Medical Assistance
recipients to enjoin a program that would reduce the number
of providers of specialty pharmacy drug services and would
require the accreditation of such service providers.

The plaintiffs assert that "the MA recipients to be
affected by the anticipated program do not and have not had

---

5.  *Arkansas Med. Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 528 (8th Cir.
1993); *Sobky v. Smoley,* 855 F. Supp. 1123, 1137-38 (E.D. Cal. 1994);
*Oklahoma Nursing Home Ass'n v. Demps,* 792 F. Supp. 721, 727 (W.D. Okla.
1992); and *Rite Aid of Pennsylvania, Inc. v. Houstoun,* 998 F. Supp. 522
(E.D. Pa. 1997).

an opportunity to be heard concerning the implementation of
the proposed program."  But the plaintiffs do not justify
this assertion, and it is incorrect.  These persons can bring
any actionable claim that they have in federal court.  It
does not require the allocation of standing to their
pharmacists for their interests to be protected through
litigation in the United States Courts.  The fact that these
persons may have serious health problems does not of course
prevent them from bringing a civil action.  The assertion
made by the plaintiffs in their brief that the Medical
Assistance recipients can not secure their own advocates is
in our view unsupported and not consistent with experience.
Many persons of limited means over the years have been
plaintiffs in federal cases, in 42 U.S.C. § 1983 cases and
many other cases.  The Medical Assistance recipients would
better state their own interests than might the plaintiffs,
who have a separate and predominately economic interest.

There is not standing on the part of the plaintiffs to
assert the recipients' claims.

The motion to dismiss the complaint will be granted.

**IT IS ORDERED** that the motion of the defendants to dismiss the complaint (Doc. 4) is **GRANTED** and the complaint is dismissed.  The Clerk of Court is directed to mark this action closed.


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  June 30, 2008.